Clifford Miller v. Nevada. Council? Good morning and may it please the Court. My name is Benjamin Gerson. I represent the appellant Clifford Miller. I'd like to reserve three minutes for rebuttal and I'll keep an eye on my time. You've got a wonderful voice there, but you need to be as close as you can to the microphone and to speak up. Understood. Thank you, Your Honor. Your Honor, if we could stop the clock one moment. Is there a way to raise the podium? Is the podium raised a bit? So there's a way, but not a way. If I provide, can the microphone, are the microphones attached to the counter or can you lift them up? They're attached to the counter. All right. Very well. So just everyone counts to just understand that acoustics in this courtroom have not been good since 2013, so that's one of the problems with this building. So do what you can with the mic, so I apologize. But you may reset your time and you may proceed. Thank you, Your Honor. There you go. May it please the Court. This Court should grant Mr. Miller's habeas petition because despite a clear roadmap from the first trial, the second trial counsel abandoned the best available defense without developing any type of alternative defense. As a result, Mr. Miller was sentenced to the maximum possible sentences on all accounts following his second trial. And I'd like to focus on two arguments having to do with the ineffective assistance of counsel under the Strickland standard. First, trial counsel was ineffective during the guilt phase for failing to present Mr. Miller's extensive mental health history, including the fact that he was under the treatment of various psychiatric, excuse me, various doctors who prescribed him psychiatric medications that caused him to act agitated and impulsive. This would have directly undercut the state's theory of premeditated first-degree murder. Second, trial counsel was ineffective for failing to present Mr. Miller's mental health history at the sentencing phase, which would have mitigated Mr. Miller's sentence. The jury imposed the maximum sentence on all accounts without having a clear picture of Mr. Miller's character or of the offense. With regard to the ineffective assistance of counsel at the guilt phase, at his second trial, Mr. Miller was convicted on a theory of premeditated murder. All that defense counsel had to do was present any of the strong evidence from Mr. Miller's first trial that the two murders were not premeditated, specifically that he only planned to kill himself and that his mental health and medications he was prescribed caused him to kill impulsively and in the heat of passion. Trial counsel was deficient, excuse me, trial counsel was deficient in the theory of premeditated murder, and second trial counsel's performance was deficient because the evidence in the record from the first trial was more than sufficient to undermine the theory of premeditated murder. So... Well, that really highlights a question I have, and that is, it's an unusual case where you almost have a dry run here in that we had the first trial and he was convicted, and the mental health evidence was there front and center. So now we have a different strategy recognizing that that one didn't work. Why would that be an effective assistance? So, Judge, I think that the key factor from the first trial was that the Nevada Supreme Court reversed, and so in the first trial... Right, but on what grounds? In the first trial, the Nevada Supreme Court reversed because two of the three first degree murder theories were determined to be legally invalid. Right. And so Mr. Miller was convicted. Well, we don't know how Mr. Miller was convicted. That's the crux of it. So there was a general verdict form, and the jury was instructed on felony murder, both on a kidnapping and on a burglary predicate felony, in addition to the premeditated first degree murder. And they convicted, but we'll never know what theory they actually convicted on, which is why the Nevada Supreme Court reversed. And so trial counsel, going into the second trial, effectively threw out the baby with the bathwater by trying to prevent the introduction of one relatively minor incident by discarding the bulk of the very helpful mental health evidence that would have gone directly to the premeditated first degree murder. So this was not a reasonable strategic decision because the outcome of the first trial was necessarily obfuscated by the general verdict form and the legally invalid theories that the jury was instructed on. I'm sorry, Judge Owens, did you have a question? Well, I did, because it seems to me that I'm anticipating what she's going to say. So I think what she's going to say is, look, there was this evidence that when he was in the military, he had homicidal thoughts. So if you get into mental health, they're going to bring in some stuff that's really bad for your client. And any time you have a double-edged sword type of evidence under Strickland, especially edpedeferent Strickland, when you're dealing with double-edged sword evidence, it's very hard for the defendant to prevail. Assuming she makes that argument, which I'm sure she will, what is your response to that? So, Judge, I would ask the Court to look specifically at the evidence. And I think it comes out in the pretrial hearing where there's this discussion with the prosecutor. And I apologize, I don't have the record site, but I could get it for you on rebuttal. What happens at that pretrial hearing is that the defense attorney effectively agrees to keep out all of the mental health evidence in exchange for not introducing this one instance where Mr. Miller was in the military and had, my understanding is he was in the process of going through mental health counseling in the military and admitted that he had this idea to beat up his superior officer with an axe handle. And so it's important to remember that his time in the military was seven years prior to the offense here and that he never acted on that. And so this incidence of a prior bad act, which arguably was not even a bad act, given that he just thought about it and never actually carried through, weighed against the bulk of the evidence that was excluded that would have undercut the state's primary theory, this was not a reasonable strategic decision. So we'd have to find that even though it is double-edged, it's one of those rare instances where we can make that kind of call, saying that this was just so one-sided. That's correct. And so this is, while it's strategic in the sense that it's not the result of neglect or happenstance, it's not reasonably strategic because it was not well thought out. And the overwhelming weight of the evidence that would have undercut the premeditated, the element of premeditation, which was the state's only theory at this point, that the felony murder theories were thrown out on direct appeal, there's no reasonable, no attorney in a reasonably good judgment would make this deal. This was a bargain where they got nothing. And I would add that it also failed to develop any kind of alternative strategy. So at closing, second trial counsel still argued for involuntary manslaughter. So he still wanted a lesser included, but adduced absolutely no evidence on the record to support that. So what do you do with the evidence that he had been stalking both Lisa and Leon, and I think he had threatened to kill Lisa at least twice, right? And so in terms of prejudice, would you address that? Certainly, Your Honor. So the prejudice prong is, I think the core of the prejudice prong is, still goes to the premeditated element at the guilt phase. And I assume, just to clarify, I assume your question refers to the guilt phase. Yes. Okay. And so at the guilt phase, the core of the prejudice really goes to the argument, to the element of premeditation and first-degree murder. And so I hate to speculate, but I would seriously question whether prior bad act evidence such as the stalking and these other things would come in at a trial. And I don't want to speculate. But, again, I think that the fact that he had not premeditated this murder, that he had left a suicide note and a last will and testament expecting Lisa to survive him all of that still outweighs these prior bad acts. If there are no further questions, I can address the ineffective assistance at the sentencing phase. So at sentencing, second trial counsel presented effectively, well, effectively, he presented exactly zero evidence to humanize Mr. Miller or to mitigate the offense. In fact, he did not even cross-examine any of the prosecution witnesses during the sentencing phase. And, effectively, his only argument at closing was that Miller was not the worst of the worst because he was not motivated to kill for money or by racial hatred. And so without a full understanding of Miller's mental health issues, the prosecution was able to frame Mr. Miller as a cold-blooded killer. And this is exactly the type of mitigation evidence that the Supreme Court has held is classic mitigation evidence and particularly weighty in the context of serious crimes that go through a sentencing phase. And I would refer the Court to Porter v. McCollum, where the Supreme Court gives significant discussion to this issue. And in terms of deficient performance on the sentencing, the type of evidence that was available was, you know, Mr. Miller, and none of this came out in the record, but I think it's important to state that this was a young man. He was struggling greatly, but he still had hope for the future. And, you know, he left a last will and testament where he asked his wife, Lisa, to take care of their puppy. He asked that she keep his wedding photos. He listed one of his prized possessions as a plaque from the Winnemucca parade. He was clearly involved in the community there. He apologized to his parents. And in the suicide note, he complains about being 27 years old and having very limited job prospects. This is somebody who clearly thought about the future. And Dr. Sesnick, who testified both as an expert and who directly treated Mr. Miller as his physician, said that while he was given these psychiatric medications, he was not well monitored. And Dr. Sesnick was not a psychiatrist, he was not an expert, and he did not closely monitor Mr. Miller on these medications and specifically stated that in this small rural town in northern Nevada, there was no psychiatric expert, no psychologist, and no inpatient mental health. And so Mr. Miller was the kind of person who may have done better with some kind of treatment, and the jury should have known that when they imposed sentence. And I think this was particularly prejudicial because during the sentencing phase, the jury sent back a question to the judge asking about the distinction between Nevada's life with parole and life without parole. And in Nevada, life with parole, you become eligible after a minimum incarceration of 40 years. And so the jury asked the judge whether he was guaranteed to get the 40 years, which implies that the jury was really on the cusp of this decision about life with or life without, and whether or not life without would have been excessive, and this was all in the context of exactly zero mitigation evidence. So had the jury known any of this particularly moving mitigation evidence, it most likely would have tipped the scales. And so I think it's fairly clear that Mr. Miller was prejudiced by the deficient performance and inability to present any of that mitigation evidence during the sentencing phase. And I see I'm getting a little bit close to my time. If there are no further questions, I'll just reserve the rest. Very well. Thank you. Just a little bit shorter. How does this sound? Great. Good morning, Your Honors. May it please the Court. Jamie Stills, Senior Deputy Attorney General, on behalf of Respondents at Belize in this matter. Respondents asked this Court to affirm the decisions of the lower Court and hold that Miller is not entitled to habeas relief. Miller is not entitled to habeas relief for three reasons. First, the Nevada Supreme Court correctly rejected his claim in Ground 5, which decision is entitled to deference. Second and third, Miller failed to satisfy Martinez to overcome the procedural defaults of Grounds 2 and 4. First, on Ground 5, the Nevada Court of Appeals correctly determined that trial counsel performed effectively during sentencing by strategically refraining from introducing evidence regarding Miller's mental health. The Nevada Court of Appeals found that Miller failed to establish deficient conduct or prejudice under Strickland, and again, that decision is entitled to deference. Here, there was simply not deficient performance on behalf of trial counsel. He made a reasonable, strategic decision to outweigh, to refrain from introducing the mental health records and the prescription medication records in order to avoid much more harmful evidence regarding Miller's homicidal urges. As my esteemed opposing counsel points out, the jury did send back a question regarding whether or not there was some issue about whether Miller would receive life without parole or with parole what he would be guaranteed to receive. It is entirely conceivable that if the jury was facing evidence regarding homicidal ideations on behalf of Miller, there would have been no question whatsoever that they would be giving him life without parole for certain. Miller advocates that the strategic decision by trial counsel was simply not actually a strategic decision, but again, the jury did not hear any evidence regarding the homicidal ideations and instead simply heard from Miller, as well as the recording and the suicide note, all of which told the jury that Miller did intend to commit suicide according to him, that he did intend for Lisa to survive him, and that he did intend for only himself to be harmed. At the first trial, trial counsel made a very big deal about the mental health records and about the prescription medications, and that jury still returned a sentence on both counts of life without parole. As a result, McGuire, who was trial counsel for Miller at the second trial, McGuire made the strategic decision to try and avoid allowing the prosecution to hammer on the homicidal ideations from Miller's military records and instead focused on Miller's testimony regarding the chain of events that occurred that night, Miller's testimony regarding only intending to commit suicide, not intending to harm Lisa or Leon. McGuire also focused on the recording, which was not played up at the first trial, and McGuire had Miller's father testify regarding finding that recording in the recording machine at Miller's apartment immediately after the murders, therefore lending credence to the fact that the recording was something that had recently been recorded. McGuire also introduced the suicide note at trial, which allowed the jury to see that Miller did intend to leave these various items to Lisa. As a result, this reasonable strategic decision did not result in any likelihood, or at least any reasonable likelihood, that the penalty phase results would have been different. Applying the doubly deferential standard of Strickland and AEDPA, Miller fails to meet the high burden of showing that the Nevada Court of Appeals determination was contrary to clearly established federal law. Moving to ground two. The district court correctly found that Miller failed to satisfy Martinez to overcome the default because trial counsel was not deficient for refraining from requesting conflict counsel, and post-conviction counsel was not deficient for refraining from raising a meritless claim on this basis. Here, post-conviction counsel made the reasonable decision not to pursue ground two regarding the quote-unquote failure to request conflict counsel. Moreover, there is no deficient performance of trial counsel because a reasonable attorney would not request appointment of conflict counsel to represent Miller during a hearing just on a motion to substitute counsel. The Nevada Supreme Court has stated in Young v. State that there is nothing in Young v. State that requires trial counsel to request appointment of a different attorney to represent the defendant during a request for a substitution hearing. That's all that was occurring in this instance, was just whether or not there was some sort of irreconcilable conflict between Miller and his trial counsel that would necessitate the appointment of a different attorney. That does not require McGuire to actually argue regarding his effectiveness or his reputation, as Miller suggests. Rather, the only issue before the court, before the trial court, was whether or not there was some sort of irreconcilable conflict, which the trial court found there was not. Therefore, there was no need for a request for alternate counsel or some sort of appointment of alternate counsel. So, counsel, I had a question for you about Mr. McGuire. In my understanding, Mr. McGuire has passed away. Yes, Your Honor. So we have an unusual situation in this case in the sense that we are prescribing certain strategic decisions to Mr. McGuire, but normally we would have a declaration from him or maybe sometimes attorneys even testify at hearings. Is there anything in this record where he sets out why he made the strategic choices that he did? Absolutely, Your Honor, and that is a wonderful question. So at that motion to substitute counsel, McGuire did state on the record that he was intending to avoid all of the military records because he wanted to avoid that evidence from coming in that included the homicidal ideations. Additionally, McGuire did file a motion in limine to specifically exclude those records as well, and at that hearing, McGuire again stated he was trying to avoid allowing that evidence in. So we have what he said before trial. Yes, Your Honor. Do we have anything post-conviction where, I mean normally where I see this come up is post-conviction, defendant and defense counsel go separate directions. The defense counsel says, well, you know, the reason why I did it was because of this. I understand we have indications as to what his thinking was prior to the verdict. Do we have anything post-verdict where he gives an explanation? Unfortunately not, Your Honor, because unfortunately grounds two and four weren't fully raised below. And so that is part of the reason why there is not a complete record below about what McGuire was specifically intending to do and not do. But in those instances, again, because of the Strickland deference, we do have to presume that McGuire was making those strategic decisions. And that combined with the records showing that he did file the motion in limine to try and keep out this evidence, and he did say at the motion to substitute counsel hearing that he was trying to keep that out, those combined are sufficient for the court to conclude that McGuire was strategically making these decisions. He also had the benefit of the Nevada court. Oh, I apologize. Yes, Your Honor. I want to compliment both counsel on their briefs. They were very helpful to get me to the place where I can make a decision. But there's one question I'd like to ask you. Why was McGuire's strategy of not getting to Miller's medical health history a reasonable strategy? As a prior trial lawyer, that sort of stuck in my mind. Could you talk to me about that, please? Absolutely, Your Honor. So Mr. McGuire had the opportunity to review the first trial records. And as Your Honors pointed out during the first part of this argument, this was essentially like a dry run, that first trial. So McGuire had the benefit of reviewing all those trial transcripts, as well as Nevada Supreme Court's decision, where the Nevada Supreme Court reversed the first trial court's results. In that Nevada Supreme Court order, the Nevada Supreme Court specifically stated that there was ample evidence from which the jury could have determined that the killings constituted first-degree murder. That was in the concurrence. Looking at that concurrence, looking at the trial results from the first trial, McGuire could have taken all of that and decided that the homicidal ideation evidence was simply too damning to Miller and was not going to be helpful and would actually be very, very harmful. And combined with that, the mental health evidence regarding his long alleged young years of suffering from depression and suicidal thoughts and his prescription medications, those weren't helpful to him at the first trial because he was still convicted of first-degree murder on both counts and he was still given life without parole on both counts. So looking at how the actual evidence played out at the first trial, looking at what the Nevada Supreme Court said in their assessment of the evidence, and looking at the options that he had for the second trial where he could introduce the suicide note, where he did introduce the recording through Miller's father and where he did introduce Miller's testimony where Miller talked about the long, lengthy time that he suffered from suicidal thoughts and did not intend to actually harm Lisa and Leon. All of those combined present a much more compelling story regarding Miller's suicidal ideation and lack of intent to harm Lisa and Leon rather than trying to rely on prescription medication and doctor testimony that simply did not play out well with the first jury and also opened the door to the prosecution to introduce the homicidal ideation evidence. So looking at those different options, weighing those different options, it seems really reasonable that McGuire would make the choice to try and stay away from what first trial counsel really played up and try a different tact to introduce Miller's suicidal thoughts and Miller's lack of intent to harm anyone through that recording, through the suicide note, through Miller's testimony. And that way he stayed away from the homicidal ideation component that the prosecution really played up at the first trial. And that takes us to ground four where Miller failed to satisfy Martinez to overcome the default of ground four because trial counsel was not deficient for reframing for presenting a defense regarding Miller's mental health. Again, McGuire had the opportunity to review all those records and saw that this did not play out well at the first trial. McGuire saw that after trial counsel at the first trial really hammered on the medications and the mental health experts, the jury simply did not buy that and then the jury returned a verdict of guilty of first-degree murder. And the Nevada Supreme Court, again, in assessing that evidence, did find, despite overturning the conviction, did find that there was ample evidence of first-degree murder. Therefore, McGuire made the reasonable strategic decision to try a different approach with introducing this thought, this defense of Miller being suicidal and not having any intent to harm. There was extensive evidence presented at the second trial that showed that after acting violently toward Lisa and stalking her and Leon, Miller deliberately stole his gun and brutally murdered Lisa and Leon. There was simply no way to overcome this type of prejudicial evidence, but McGuire did his very best. Miller's trial counsel, McGuire, and his post-conviction attorney made the best arguments they could on his behalf with the benefit of hindsight from the first trial, but ultimately Miller could not evade the substantial evidence against him. His arguments faulting his counsel failed to meet his burden under AEDPA. Accordingly, and for the foregoing reasons, Respondents ask this Court affirm the decision of the lower court. Unless there are no other questions, I'll sit down. All right. Thank you very much, counsel. Thank you, Your Honors. Before you get into what you'd really like to tell us, there's one question that I should have asked you earlier, and I didn't because you were so busy, but I really would like to take time at the very beginning because it has bothered me. Given the fact that McGuire brought a motion in limine addressing Miller's mental health history, doesn't it follow that he was aware of that evidence? I think he was aware of that evidence. I think it may be a matter of degree, however. If we could start the clock. Thank you. What I would point to in the record is that when Mr. Miller wrote to the court and asked for replacement counsel, Mr. McGuire appeared, and what comes out in that colloquy is that Mr. McGuire, despite being assigned to the case and taking over from another public defender, was not up to speed on the record, despite it being only six weeks to trial. And so he admits to the judge that he's endeavoring to get on top of this voluminous record. The first trial was 18 days, and so this was an enormous amount of material. And so I would question that even if Mr. McGuire was aware, in principle, of some of this mental health evidence, whether he had really delved into it and had conducted a thorough weighing of what he extended to exclude and the benefit of trying to keep out this prior violent ideation that had happened seven years earlier. And so to your earlier question, I think this is not a reasonable decision. It may be strategic in the sense that it's not accidental or happenstance, but it's not reasonable in the sense that counsel had a comprehensive review of the record, had investigated it, had spoken to the experts, and had really made an informed decision about whether or not to keep it out. Okay. Thank you. I see your point. And just to respond very briefly, Judge Owens, on the deference question, because I know I am running out of time and this is a complicated issue, I would point to the Nevada Court of Appeals where they rejected the ineffective assistance of counsel claim on EDPA grounds during the sentencing phase. And I would just note that a close reading of it, they substitute the test in McNelton, which is basically that any decision about whether or not to introduce mitigating evidence should be determined as strategic at face value. That's not the test in Strickland, and so this is a contrary to application. And so you managed to get around EDPA deference, and then the deference to the trial counsel's strategic decision, again, this was not a reasonable decision because just the weight of the evidence, based on the benefit of keeping out this very minor prior offense, really could not have been within the reasonable bounds of professional judgment. Very briefly, on the Young issue, it's in the briefs, but applying Young, which really has to do with a breakdown in communication between counsel and an appointed lawyer, that was the beginning of the conflict. What really happened in the conflict is more of a coiler claim, and this court addressed something very similar in Hurst, where an attorney has a divided interest between zealously representing his client and a personal interest in Hurst. It had to do with a book deal. It was a very well-known case where he adjusted his trial schedule in order to benefit from the book deal. In this case, Mr. McGuire was really just seeking to preserve his reputation in front of the court and also reveal his trial strategy in front of the prosecutor. And so with that, I'm out of time, but I just want to close, and I'll submit on saying that this, at every phase of this trial, this is really a violation of the Sixth Amendment at every stage, and we'd ask you to reverse with instructions to grant the writ. Thank you. Thank you, counsel. Thank you to both of you for your briefing and argument in this case, and I especially want to thank your office of the Federal Public Defender for Las Vegas, for the District of Nevada, for stepping up and taking on this case. Your advocacy is very good in these cases, and it makes a difference, so we really appreciate you stepping up and taking this one. Thank you very much. All right, this matter is submitted. We'll move on to the next case.
judges: WALLACE, McKEOWN, OWENS